

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AES:GMR
F. #2022R00612

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 9, 2022

By E-mail

The Honorable Taryn A. Merkl
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    United States v. William Swift
              Criminal Case No. 22-MJ-846

Dear Judge Merkl:

      The defendant William Swift is scheduled to appear before the Court at 2:00 p.m. on August 9, 2022, for his initial appearance. The government respectfully submits this letter in support of its application for a permanent order of detention. The defendant is charged under 18 U.S.C. § 875(c) for communicating threats in interstate commerce. As discussed more fully below, between February and June 2022, the defendant sent threatening emails and other electronic communications to individuals associated with the Woodstock Fruit Festival ("WFF" or "the festival"), a health and wellness event scheduled to be held in upstate New York in late August 2022. These messages included threats to kill and seriously injure specific people and to orchestrate a mass shooting if the event was not cancelled. The defendant also indicated that if arrested, he would kill the event's organizer upon his release. Detention is necessary given the nature of the defendant's threats, the strong evidence of his guilt, and the danger he presents to the victims and the community

I.      Background

      The charges in this case arise from the defendant's communication of threats directed at people associated with the WFF, scheduled to be held later this month in Diamond Point, New York. Beginning in February 2022, the defendant used his Gmail.com email account (the "Gmail Account"), and other methods of communication, to threaten the victims in this case. The defendant sent a series of emails to Jane Doe, and others, which contained written threats and attached audio recordings in which the defendant threatened violence.

In an email sent on February 21, 2022, the defendant stated to Jane Doe that specific people should not be permitted to attend the festival and that Jane Doe should "[t]ell them they should have learned to be fucking nice, because people fucking snap. If I see them on social media at WFF 2022, I'll show up to WFF and remove them."  The defendant also sent sent several audio recordings to Jane Doe and other individuals associated with the WFF, in some of which he stated the following:

- "[John Doe-2, John Doe-1, and John Doe-3] and the fat whores, yeah none of them can go to Woodstock, if I see them at Woodstock online I'll go to Woodstock with a gun and just shoot them or whoever else is in my way…not you, I'll never shoot you, yet."

- "If I see him at Woodstock, I'll kill him too. I'm buying a gun, fuck that."

- "I just want to harm the people that insulted me, and that's what I'm going to do, whether you like it or not."

- "I hope they all do come so I get to go up and shoot everyone."

- "The ideal thing would be to go up to Woodstock to shoot up…the Jewish meet up. That would be ideal."

- "Don't be surprised, when I shoot up Woodstock, when I see those people there. [John Doe-3, John Doe-2, John Doe-1].

- "[John Doe-3], the fat whore, and the friend…[John Doe-4], I don't really like him but whatever…but yeah just those for now, if I see them in New York City this summer, I'm gonna hurt…I can bring a hammer and just crack their skulls…I'll probably get away with it too, I really will. Tell them not to come, they are not welcome back to Woodstock cause I fucking said so. [John Doe-3] and those two fat whores."

Several of the other audio recordings sent in February 2022 also contain hateful, racially tinged language in which the defendant lauds the Ku Klux Klan and espouses hate for Jewish and Black people.

In May 2022, the defendant sent threatening emails from the Gmail Account to other people associated with the WFF, including John Doe-2 and John Doe-4.  In a message sent to John Doe-2, the defendant writes in part: "[H]ey piece of shit bitch, I want to make something clear, WFF is over. [John Doe-1's] retreats are over whether you like it or not.  [I]f I see you, you will regret coming to NYC, and you will feel my pain."  The defendant

2

later sent another email in which he said "[I] want to make something clear. You or [John Doe-1] will be harmed immesnaely [sic] if seen in NYC."

In another email sent to John Doe-4, the defendant wrote "Hey [John Doe-4], this is William Swift from WFF. IF [sic] you attend WFF again, I'm going to end your life for sure. I hate you and [John Doe-1] and view this as a death cult and if I see you at WFF I will aim for you and your friends or your woman but mainly you."

In June 2022, the defendant sent several more emails to Jane Doe threatening violence unless she complied with his demand to cancel the WFF. In one email, the defendant wrote "[I[f WFF happens this year, I will be there with my legal pocketknife, and I will be showing people how it works…." The defendant later emailed Jane Doe an audio recording in which he stated in part "I'm not afraid of the police, I could have stabbed you in Woodstock 2013, I'd be so much healthier if I just spent the last ten years in jail…." The recording threatened that Jane Doe should cancel the festival if she did not want "this stuff to happen." In an additional recording emailed to Jane Doe, the defendant stated that he fantasized about "doing a fucking Ted Bundy" to Jane Doe because she did not comply with his demand to cancel the festival.

The threatening emails and audio recordings described above account for a portion of the defendant's overall conduct. The defendant continues to contact the victims, including as recently as this past weekend. Further, the government's investigation has uncovered additional threatening and harassing messages and communications sent to other people associated with the WFF. These messages were sent through both email and other means, including social media.

II. Legal Standard

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e). A finding of dangerousness must be based on "clear and convincing evidence." See United States v. Williams, 654 Fed. Appx. 3, 3 (2d Cir. 2016) (summary order). A defendant's risk of flight need only be based on a preponderance of the evidence. See United States v. Boustani, 932 F.3d 79, 81 (2d Cir. 2019) (citing United States v. Sabhani, 493 F.3d 63, 75 (2d Cir. 2007)). In meeting its burden, the government is "not…bound by the rules of evidence…and may proceed by proffer." See Williams, 654 Fed. Appx. at 3 (citing United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995)).

In deciding the issue of detention, the Court must consider the four factors specified in the Bail Reform Act: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence in the case; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community. 18 U.S.C. § 3142(g).

Depending upon the specific factors present in a case, home confinement and electronic monitoring may be an insufficient means of protecting the community and insuring the defendant's return to Court. See United States v. Cinquemani, 100 F.3d 941, 941 (2d Cir. 1996). As the Second Circuit recognizes, even under the most stringent conditions, the security of a detention facility cannot be replicated in a defendant's home. Id. (citing United States v. Gotti, 776 F. Supp. 666, 672 (E.D.N.Y. 1991)).

III.   The Defendant is a Danger to the Community and Should be Detained

The government has met its burden of proving by clear and convincing evidence that the defendant poses a serious danger to individuals associated with the WFF and the community at large. The very nature of the defendant's course of conduct in this case has been to threaten wanton acts of violence against specific individuals and a social gathering. The violent acts which the defendant threatens to perpetrate come in a variety of forms, including shooting victims, stabbing them, and bashing them in the head with a hammer. The evidence of this conduct is strong given that the charged offense involves communications sent through electronic means. Records of these communications and the communications themselves have been preserved by various internet service providers and produced to the government. As detailed above, some of the communications at issue are audio recordings of the defendant's own voice. The government and the Court need not speculate about the defendant's conduct if he were to be released. He has already stated his intentions if arrested. He previously indicated in an electronic communication to another person associated with the WFF that, if arrested, he would kill Jane Doe. A copy of this communication is provided below:



The defendant has also stated that "he is unafraid of the police" and that "he would get away" with killing or seriously injuring the victims in this case. These circumstances weigh heavily against release.

      A.      Nature of the Crimes Charged

The defendant's criminal conduct consists of repeated threats of violence, including shooting, stabbing, and assaulting victims with a hammer. "These alleged offenses are serious and suggest that the Court should exercise caution in determining whether to release [the defendant]" before trial. United States v. Waldman, No. 18-MJ-4701 (SN), 2018 WL 2932729, at *3 (S.D.N.Y. June 12, 2018) (considering the many threats of violence directed at the victim in a case under 18 U.S.C. § 875(c) when deciding to detain the defendant). The defendant's threats were designed to scare and intimidate his victims. Unfortunately, the defendant has succeeded in that respect and the victims have communicated their fear of the defendant to law enforcement.

      B.      The Weight of the Evidence

The evidence of the defendant's guilt is strong. The defendant used the Gmail Account to send threatening messages to the victims. Records provided by Google confirm that the account is registered in the defendant's name and the defendant's phone number and other biographical information are linked to the account. The defendant also identifies himself as William Swift in many of the threatening messages. Further, as described above, many of the threats in this matter were made via audio recording and the voice making the threats is clearly that of the defendant. The defendant has also transmitted threats using other platforms, including Instagram. His publicly viewable Instagram account contains pictures of him, further linking him to the account.

Courts have routinely found that the type of evidence present in this case – recorded and transcribed communications demonstrating threats under 18 U.S.C. § 875(c) – weighs in favor of detention. See Waldman, 2018 WL 2932729, at *4 (noting that the weight of the evidence was "considerable" where the defendant used his own name and email address when transmitting threats); United States v. Choudhry, 941 F. Supp. 2d 347, 354 (E.D.N.Y. 2013) (finding that uncontroverted transcripts showing threats supported detention).

      C.      The Defendants' History and Characteristics

In reviewing a defendant's history and characteristics, among other factors, the Court must consider "the person's character, physical and mental condition, . . . history relating to drug or alcohol abuse [and] criminal history." 18 U.S.C. § 3142(g)(3)(A). Here, the defendant is a self-described "incel," or involuntarily celibate. Members of this movement have increasingly been involved in violent activities. The defendant also has recent relevant prior contacts with law enforcement that counsel in favor of detention. Only one month ago, on July 9, 2022, the defendant was arrested by the New York City Police

Department ("NYPD") in connection with an incident in which he told an acquaintance over Instagram that he "fantasize[d] about shooting up Washington Square Park." In other messages, the defendant acknowledges sending threatening messages to people and suggests he has a substance abuse problem. Prior to his arrest in that case, the NYPD took the defendant to the hospital for a mental health evaluation. He was ultimately charged by the Manhattan District Attorney's Office and has a pending case in state court.

        D.        <u>Nature and Seriousness of the Danger Presented by the Defendant</u>

The nature of the defendant's offense, his threats to harm the victims, and the specificity of the threats directed at Jane Doe and others associated with WFF – including the threats to commit a mass shooting at the WFF, and to kill Jane Doe if he is arrested – all demonstrate that he is a serious and present danger to the victims as well as to the community. As a result, the government has significant and well-founded concerns that if released the defendant will attempt to follow through on his prior threats. The government further notes that it has notified Jane Doe and other victims pursuant to the Crime Victims' Rights Act, and that Jane Doe has indicated that she is in favor of the defendant's detention.

IV.    <u>The Defendant Poses a Risk of Flight</u>

In addition to posing a danger to the community, the defendant also presents a risk of flight. As detailed above, the evidence against the defendant on the charged crime is strong, including evidence demonstrating consciousness of his guilt. The government is unaware of any stable employment, relationships, or other strong ties to the community which would serve to hinder the defendant's flight.

V.    <u>Conclusion</u>

For these reasons, the government respectfully requests that the Court enter an order of permanent detention as to the defendant.

                                                                          Respectfully submitted,

                                                                         BREON PEACE
                                                                         United States Attorney

                                   By:    */s/ Gil Rein*
                                                         Gilbert M. Rein
                                                         Assistant U.S. Attorney
                                                         (718) 254-6407

cc:     Clerk of Court (TAM) (by Email)